Filed:  August 8, 1997

UNITED STATES COURT OF APPEALS

FOR THE FOURTH CIRCUIT

_____

Nos. 96-1464(L)
(CA-94-952)

_____

In Re: Barbara H. Allen,

                                        Appellant,


Better Government Bureau, etc.,

                              Plaintiff - Appellee.



_____

O R D E R

_____


        The Court amends its order filed July 16, 1997, as follows:

        On page 20, second full paragraph, lines 9-10 -- the last sentence on the page is corrected to begin:  "Concurrence at 11; see also id. at 10 (noting . . . .)."

        On page 23, line 2 of indented quotation -- "common-law rule in 1871" is corrected to read "common-law rules in 1871."

                              For the Court - By Direction


                              /s/ Patricia S. Connor
                              _____
                                      Clerk

Filed: July 16, 1997

**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

In Re: BARBARA H. ALLEN,
Appellant,

BETTER GOVERNMENT BUREAU,
INCORPORATED, an Ohio Corporation,
Plaintiff-Appellee,

v.

DARRELL V. MCGRAW, JR., Attorney
General, State of West Virginia,
Personally and in his Official
Capacity; BETTER GOVERNMENT
BUREAU OFFICE OF THE ATTORNEY

GENERAL STATE OF WEST VIRGINIA, A
Body Politic, A Corporate
Instrumentality of Government with
Limited Agency and Quasi-
Sovereign Capacity; KEN HECHLER,
Secretary of State, in his Official
Capacity,
Defendants,

v.

DONNA WILLIS,
Party in Interest.

No. 96-1464

BETTER GOVERNMENT BUREAU,
INCORPORATED, an Ohio Corporation,
Plaintiff-Appellee,

v.

DARRELL V. MCGRAW, JR., Attorney
General, State of West Virginia,
Personally and in his Official
Capacity,
Defendant-Appellant,

and

BETTER GOVERNMENT BUREAU

OFFICE OF THE ATTORNEY GENERAL
STATE OF WEST VIRGINIA, A Body
Politic, A Corporate Instrumentality
of Government with Limited
Agency and Quasi-Sovereign
Capacity; KEN HECHLER, Secretary
of State, in his Official Capacity,
Defendants,

v.

BARBARA H. ALLEN; DONNA WILLIS,
Parties in Interest.

No. 96-1601

2

BETTER GOVERNMENT BUREAU,
INCORPORATED, an Ohio Corporation,
Plaintiff-Appellee,

v.

DARRELL V. MCGRAW, JR., Attorney
General, State of West Virginia,
Personally and in his Official
Capacity,
Defendant-Appellant,

and

BETTER GOVERNMENT BUREAU

No. 96-1652

OFFICE OF THE ATTORNEY GENERAL
STATE OF WEST VIRGINIA, A Body
Politic, A Corporate Instrumentality
of Government with Limited
Agency and Quasi-Sovereign
Capacity; KEN HECHLER, Secretary
of State, in his Official Capacity,
Defendants,

v.

BARBARA H. ALLEN; DONNA WILLIS,
Parties in Interest.

_____

**ORDER**

A member of the Court requested a poll on the suggestion for
rehearing en banc. The poll failed to produce a majority of the judges
in active service in favor of rehearing en banc.

Chief Judge Wilkinson, and Judges Russell, Widener, Wilkins,
Luttig, and Williams voted for rehearing en banc. Judges Murnaghan,
Ervin, Niemeyer, Hamilton, Michael, and Motz voted against rehear-
ing en banc. Judge Hall disqualified himself and took no part in the
consideration of this case.

3

Judge Motz filed an opinion concurring in the denial of rehearing en banc, in which Judges Murnaghan, Ervin, Hamilton, and Michael joined. Judge Luttig filed an opinion dissenting from the denial of rehearing en banc, in which Chief Judge Wilkinson, and Judges Russell, Widener, Wilkins, and Williams joined.

The suggestion for rehearing en banc is hereby denied. Entered at the direction of Judge Motz for the Court.

DIANA GRIBBON MOTZ, Circuit Judge, concurring in the denial of rehearing en banc:

When a government employee acts within the scope of his authority in an objectively reasonable manner, the qualified immunity doctrine shields his conduct from scrutiny in a § 1983 damages action. Anderson v. Creighton, 483 U.S. 635 (1987); Harlow v. Fitzgerald, 457 U.S. 800 (1982). In these circumstances qualified immunity not only insulates an official from liability, but also entitles him to escape trial. Mitchell v. Forsyth, 472 U.S. 511, 526 (1985). This court's unanimous holding in the case at hand -- that a government employee who performs acts "clearly established to be beyond the scope of his discretionary authority" cannot claim qualified immunity -- completely accords with these principles. See In re Allen, 106 F.3d 582, 593 (4th Cir. 1996).

Indeed, although Attorney General McGraw petitioned for rehearing, urging that we follow McElveen v. County of Prince William, 725 F.2d 954 (4th Cir. 1984), and apply subjective factors to evaluate whether an official is entitled to qualified immunity, McGraw himself expressly conceded that our formulation of the "test for determining whether qualified immunity applies" in this case "is consistent with this Court's decisions in a number of cases and is supported by the Supreme Court's decision in Anderson v. Creighton." McGraw's concession was well advised. Our holding not only accords with Fourth Circuit precedent, Allen, 106 F.3d at 593-94, and that of every other court to consider the question, id. at 590, but also, and most importantly, with controlling Supreme Court authority. Id. at 591-93.

Our dissenting colleagues, however, would grant rehearing on a basis never suggested by McGraw or adopted by any court. They

4

would extend the powerful protection afforded by the qualified immunity doctrine to employees committing acts clearly established to be beyond the scope of official duties. Such a holding would be contrary to the purposes of the qualified immunity doctrine, undermine its validity, and conflict with Supreme Court directives as to when the doctrine is applicable. Such a holding would be both unprecedented and unwise.

The court's opinion in this case sets forth my position; I write here only to respond to the call for rehearing.

I.

Our dissenting colleagues vociferously assert that the court's opinion is contrary to controlling Supreme Court precedent. To the contrary, our holding is entirely consistent with, in fact compelled by, Supreme Court precedent.

At common law an official's immunity was limited to acts within the scope of his authority, see Allen, 106 F.3d at 591-92, and long before the Harlow Court created modern qualified immunity "the decisions h[ad], indeed, always imposed as a limitation upon [official] immunity that the official's act must have been within the scope of his powers." Barr v. Mateo, 360 U.S. 564, 572 (1959) (quoting Gregoire v. Biddle, 177 F.2d 579, 581 (2d Cir. 1949)) (plurality opinion) (internal citations omitted). The Supreme Court followed this unbroken line of precedent in applying qualified immunity under § 1983. See, e.g., Procunier v. Navarette, 434 U.S. 555, 561-62 (1978) (holding § 1983 immunity dependent upon "the scope of discretion and responsibilities of the office"); Wood v. Strickland, 420 U.S. 308, 318 (1975) (same). That approach is the only one consistent with the Court's long held view, first expressed in absolute immunity cases, that "the relation of the act complained of to matters committed by law to [the official's] control or supervision . . . must provide the guide in delineating the scope of the rule which clothes the official acts of the executive officer with immunity." Scheuer v. Rhodes, 416 U.S. 232, 247 (1974) (quoting Barr, 360 U.S. at 573-74 (1959)) (quotation marks omitted). See also Butz v. Economou, 438 U.S. 478, 495 (1978) (official immunity does not abolish the liability of officers "for actions manifestly beyond their line of duty.").

5

<u>Harlow</u> did not signal a break with this long held understanding of official immunity. In <u>Harlow</u> and its progeny, the Supreme Court reiterated that a government official may claim qualified immunity only when "<u>an official's duties legitimately require action</u> in which clearly established rights are not implicated." <u>Harlow</u>, 457 U.S. at 819 (emphasis added); <u>Mitchell</u>, 472 U.S. at 525; <u>see also Anderson</u>, 483 U.S. at 639 ("whether an official protected by qualified immunity may be held personally liable for an allegedly unlawful <u>official action</u> generally turns on the `objective legal reasonableness' of the action.") (emphasis added); <u>id.</u> at 640 (discussing when clearly established law protects "an official action.").

Furthermore, the policies that underlie <u>Harlow</u> support following the traditional scope of authority rule. In formulating the modern, objectively reasonable, qualified immunity doctrine, the Supreme Court recognized it was resolving the "balance between the evils inevitable in any available alternative." <u>Harlow</u>, 457 U.S. at 813-14. <u>See also Wyatt v. Cole</u>, 504 U.S. 158, 168 (1992); <u>Anderson</u>, 483 U.S. at 638. On the one hand, in "situations of abuse of office, an action for damages may offer the only realistic avenue for vindication of constitutional guarantees;" on the other, the costs of such suits are great to the defendant officials and "society as a whole." <u>Harlow</u>, 457 U.S. at 814. For these reasons, the Court made it clear that it was providing qualified immunity to government employees because of their public office and reserving the immunity for performance of official duties.

Thus the Court explained that governmental employees are accorded qualified immunity from the consequences of objectively reasonable official acts to prevent "the diversion of <u>official</u> energy from pressing <u>public</u> issues, and the deterrence of able citizens from acceptance of <u>public office</u>" and "the danger that the fear of being sued will `dampen the ardor of all but the most resolute, or the most irresponsible [<u>public officials</u>], in the unflinching discharge of their <u>duties</u>.'" <u>Harlow</u>, 457 U.S. at 814 (quoting <u>Gregoire</u>, 177 F.2d at 581) (bracketed material supplied by <u>Harlow</u> Court) (emphasis added). <u>See also Wyatt</u>, 504 U.S. at 168; <u>Mitchell</u>, 472 U.S. at 526.

But, this "principal rationale for affording certain public servants immunity from suits for money damages arising out of their official

6

acts is <u>inapplicable to unofficial conduct</u>." <u>Clinton v. Jones</u>, No. 95-1853, 1997 WL 273679, at \*7 (U.S. May 27, 1997) (emphasis added) (holding in § 1983 action no absolute immunity for damages arising from "unofficial conduct"). Thus, as the Supreme Court reaffirmed only a few days ago, the Court has "never suggested that the President, <u>or any other official</u>, has an immunity that extends beyond the scope of any action taken in an official capacity." <u>Id.</u> at \*8 (emphasis added). By definition, government officials acting beyond the scope of their authority are not engaged in the "duties" of "public office," involving "public issues." <u>Harlow</u>, 457 U.S. at 814. They are instead acting outside the scope of any duty of public office, and thus neither the "principal rationale" for official immunity nor the immunity itself shields them. <u>Clinton</u>, 1997 WL 273679, at \*7.

When a government employee's acts are clearly established to be beyond the scope of his official duties, obviously his acts are not "legitimately require[d]" by those duties as <u>Harlow</u> directs. <u>Harlow</u>, 457 U.S. at 819. The dissenters' extension of qualified immunity to those acts would totally undermine the careful test that the Supreme Court formulated in <u>Harlow</u> in light of and consistent with its decisions in <u>Barr</u>, <u>Scheuer</u>, <u>Wood</u>, <u>Procunier</u>, and <u>Butz</u>, and which it has reiterated in <u>Clinton</u>, <u>Wyatt</u>, <u>Anderson</u>, and <u>Mitchell</u>.

II.

The dissenters' unwarranted extension of qualified immunity to acts clearly established to be beyond the scope of official duties also finds no support in the procedure the Supreme Court has mandated for determining whether an official can claim such immunity.

The Supreme Court has crafted a two-step process for determining whether an official may claim immunity: 1) was an official in similar circumstances granted a common law immunity at the time of passage of § 1983; 2) do the purpose and history of § 1983 or <u>Harlow</u>'s special policy considerations require providing immunity. <u>Wyatt</u>, 504 U.S. at 163-64 (<u>cited and quoted in Allen</u>, 106 F.3d at 590-92); <u>id.</u> at 175-76 (Rehnquist, C.J., dissenting); <u>Malley v. Briggs</u>, 475 U.S. 335, 339-340 (1986). In fashioning our opinion, we closely followed this approach; the dissenters attempt to ignore it.

7

First, after examining Blackstone's <u>Commentaries</u> and four nine-teenth century Supreme Court cases, we concluded, as the Supreme Court did in <u>Butz</u>, 438 U.S. at 489-90, that at common law government officials received no immunity for actions that were beyond the scope of their authority. <u>See Allen</u>, 106 F.3d at 591-592.* We proceeded to find that nothing in "the history and purpose of § 1983 . . . suggests that Congress intended government officials acting clearly beyond the scope of their authority to be immune from suits for money damages." <u>Id.</u> at 592. Tellingly, the dissent does not dispute this conclusion.

We then considered "the special policy concerns involved in suing public officials." <u>Id.</u> at 592-93. We concluded that these policy concerns -- preservation of government officials' "ability to serve the public good or to ensure that talented candidates [are] not deterred by the threat of damages from entering public service," <u>Wyatt</u>, 504 U.S. at 167 -- are not implicated when an official acts totally beyond the bounds of his authority. <u>See Clinton</u>, 1997 WL 273679, at *8 ("This reasoning provides no support for an immunity for unofficial conduct.").

Although the dissent suggests certain "horribles" assertedly sure to arise from our holding, it never confronts the fundamental difficulty with its own approach, which would shield an official from suit who knew or should have known that he was acting well beyond the bounds of his authority. To hold as the dissent suggests would award public employees more protection than they were allowed at common law, and expand <u>Harlow</u> to public employees <u>who violate the public</u>

―――――――――――――――――――――――――――――――――――――――――――

* The dissent's assertion that the common law does not support our holding is made without citation to <u>any</u> authority. Similarly, the dissent's contention that after <u>Harlow</u> common law authorities are no longer applicable in determining whether qualified immunity applies, ignores <u>Malley v. Briggs</u>, <u>Wyatt v. Cole</u>, and <u>Tower v. Glover</u>, each of which postdates <u>Harlow</u>, and each of which states the Court's"well established" two part, <u>common law</u> test for determining "questions of immunity under § 1983." <u>See Malley</u>, 475 U.S. at 339; <u>Wyatt</u>, 504 U.S. at 163-64; <u>id.</u> at 175-76 (Rehnquist, C.J., dissenting); <u>Tower v. Glover</u>, 467 U.S. 914, 920-22 (1984). <u>See also Heck v. Humphrey</u>, 512 U.S. 477, 491-95 n. 1 (1994) (Souter, J., concurring).

8

trust by acting far beyond the permissible scope of their responsibilities. Such a holding would not benefit the government, or the public, and could only serve a government official's private interests. Yet, the Supreme Court has specifically directed that qualified immunity is meant to "safeguard government, and thereby protect the public at large, not to benefit its agents." Wyatt, 504 U.S. at 168 (emphasis added).

Moreover, an extension of the qualified immunity doctrine in the manner the dissent suggests, i.e. to benefit an official's private interests, is totally unnecessary in view of our careful formulation of a standard that preserves great leeway to government employees for the aggressive performance of their official duties. Allen, 106 F.3d at 592-94. Thus, "an official may claim qualified immunity as long as his actions are not clearly established to be beyond the boundaries of his discretionary authority." Id. at 593 (emphasis added). Only if an employee acts in a way plainly beyond the outer perimeter of his official duties does he lose the right to claim immunity from suit. This standard provides officials with far more protection than the standard adopted by every other court that has considered the question. All of those courts have held that officials cannot claim qualified immunity for any acts beyond the scope of their authority. See, e.g., Schechter v. Comptroller of New York, 79 F.3d 265, 268-70 (2d Cir. 1996); Lenz v. Winburn, 51 F.3d 1540, 1545-47 (11th Cir. 1995); Merritt v. Mackey, 827 F.2d 1368, 1373 (9th Cir. 1987).

The principal "horrible" raised by the dissent-- that even our quite narrow holding will require federal courts to perform cumbersome inquiries into state law -- is thus belied by the experience of our sister circuits. Not a single court that has held that officials acting beyond the scope of their authority cannot claim qualified immunity has suggested that this inquiry (far broader than the one we mandated) is overly burdensome. See, e.g., Schechter, 79 F.3d at 268-70; Lenz, 51 F.3d at 1545-47; Merritt, 827 F.2d at 1373. See also Mackey v. Dyke, 29 F.3d 1086, 1095 (6th Cir. 1994) ("defendants bear the initial burden of coming forward with facts to show they were acting within their discretionary authority at the time in question."); Rheaume v. Texas Dept. of Public Safety, 666 F.2d 925, 930 (5th Cir. 1982) (An officer may not claim qualified immunity unless he "has shown that

9

he was acting in his official capacity and within the scope of authority.").

In fact, federal courts are well equipped to examine state law to answer a federal question; even the dissenters recognize that federal courts frequently must interpret state law in § 1983 actions. Federal courts have regularly made an identical scope of authority inquiry in cases of absolute immunity, where "the scope of immunity has always been tied to the `scope of . . . authority.'" Doe v. McMillan, 412 U.S. 306, 320 (1973) (quoting Wheeldin v. Wheeler, 373 U.S. 647, 651 (1963)); see also Westfall v. Erwin, 484 U.S. 292, 297-98 (1987). Furthermore, in the vast majority of cases a defendant official's conduct "relates to, or flows from, conduct that the official is indeed authorized to commit" and so he will easily meet his scope of authority burden in the first pleading raising qualified immunity. Allen, 106 F.3d at 594.

In sum, the court correctly concluded that an official acting well beyond the scope of his authority may not claim qualified immunity under the Supreme Court's "well established" approach "to questions of immunity under § 1983." Malley, 475 U.S. at 339. An official who acted beyond his discretionary authority had no immunity from suit at common law. Allen, 106 F.3d at 591-92. There is nothing in the history or purposes of § 1983 to suggest "that Congress meant to enlarge common law immunities to include officials acting outside the scope of their authority," and the "special policy concerns involved in suing public officials" are entirely consistent with our decision in this case. Id. at 592-94.

III.

Before concluding, I must briefly address the dissent's fundamental error in urging that Davis v. Scherer, 468 U.S. 183 (1984), controls the case at hand.

The Supreme Court has expressly held that Davis concerned a single "entirely discrete question: Is qualified immunity defeated where a defendant violates any clearly established duty, including one under state law, or must the clearly established right be the federal right on which the claim for relief is based? The Court held the latter." Elder

10

v. Holloway, 510 U.S. 510, 515 (1994) (citing Davis, 468 U.S. at 193-96 & n. 14) (emphasis in original). Therefore, the sole "discrete" question answered in Davis is whether a defendant official's properly asserted claim of qualified immunity may be "defeated" or "overcome" because the official has violated some other statute or regulation. Id. at 514-15 (quoting Davis, 468 U.S. at 197). Davis does not address, let alone decide, whether a government employee, who commits acts clearly established to be beyond the scope of his official authority, may claim qualified immunity in the first instance.

Thus, the case at hand deals with an entirely different question than that presented in Davis. In this respect, this case is far closer to Wyatt v. Cole, 504 U.S. 158 (1992), than Davis. In Wyatt, decided eight years after Davis, the Supreme Court addressed the question of whether private parties could, in the first instance, claim qualified immunity, not whether a violation of clearly established law defeated that immunity. The Wyatt Court did not find that Davis prohibited this initial inquiry or was even relevant to it. Indeed, just as the parties in the case at hand have never suggested that Davis was relevant to the scope of authority question, the Wyatt Court never cited Davis.

Yet the Court in Wyatt, after following the "well established" approach to determine whether a defendant can claim immunity, concluded that qualified immunity was not "available for private defendants faced with § 1983 liability for invoking a state replevin . . . statute." Wyatt, 504 U.S. at 168-69 (emphasis added). Here we have followed precisely the same "well established" approach and have similarly concluded that qualified immunity is not available to a government employee engaging in acts clearly established to be beyond the scope of his official duties.

Furthermore, contrary to the suggestion of the dissent, whether an official has violated state law does not control the scope of authority inquiry. See Allen, 106 F.3d at 594-95. Instead, the analysis focuses solely on the quite different inquiry of whether a government employee's acts clearly fall beyond the outer limit of his official authority. Id.

Accordingly, neither Wyatt nor the case at hand concern the only question addressed in Davis: "[i]s qualified immunity defeated where

11

a defendant violates <u>any</u> clearly established [state law] duty." <u>Elder</u>, 510 U.S. at 515 (first emphasis added). The <u>Davis</u> plaintiff, unlike the Better Government Bureau ("BGB") or the plaintiff in <u>Wyatt</u>, made no claim that the defendants were not entitled to immunity at all. The <u>Davis</u> plaintiff did not argue that under the common law a defendant official had no immunity for acts that "violat[ed] some <u>other</u> statute or regulation." <u>Davis</u>, 468 U.S. at 194 n. 12 (emphasis in original). This is because no such common law rule exists. Therefore, in <u>Davis</u> the plaintiff, unlike BGB or the <u>Wyatt</u> plaintiffs, was not asking the Court to recognize that at common law in 1871 (when § 1983 was enacted) no immunity existed, and thus no immunity should exist today. Instead, the <u>Davis</u> plaintiff was asking the Court to shrink the immunity recognized at the time of passage of § 1983 as a policy matter.

If the <u>Davis</u> Court had accepted the plaintiff's position, officials that violated a state regulation would have had <u>less</u> immunity protection than the common law afforded at the time of § 1983's passage. Thus, the <u>Davis</u> Court's rejection of that position was well founded. In contrast, here and in <u>Wyatt</u>, the defendant asks for an immunity <u>he would not have been granted at common law</u>. As noted within, the Supreme Court has eschewed providing immunity in such circumstances unless compelling special policy concerns require such a holding. But just as no compelling policy concern requires a court to afford qualified immunity to private parties "faced with § 1983 liability for invoking a state replevin . . . statute," <u>Wyatt</u>, 504 U.S. at 168-69, no compelling policy reason requires that qualified immunity be afforded government employees who have acted in a way clearly established to be beyond the scope of their official duties.

IV.

The dissent suggests an unprincipled departure from the Supreme Court's long held understanding of official immunity and § 1983. Justice Kennedy, joined by Justice Scalia, concurring in <u>Wyatt</u> warned that such departures are not to be undertaken lightly:

> It must be remembered that unlike the common-law judges whose doctrines we adopt, we are devising limitations to a remedial statute, enacted by Congress, which "on its face

12

does not provide for <u>any</u> immunities." <u>Malley</u>, <u>supra</u>, 475 U.S. at 342, 106 S.Ct. at 1096-97 (emphasis in original). We have imported common-law doctrines in the past because of our conclusion that the Congress which enacted § 1983 acted in light of existing legal principles. <u>Owen v. City of Independence</u>, 445 U.S. 622, 637-638, 100 S.Ct. 1398, 1408-09, 63 L.Ed.2d 673 (1980). That suggests, however, that we may not transform what existed at common law based on our notions of policy or efficiency.

<u>Wyatt</u>, 504 U.S. at 171-72 (Kennedy, J. concurring) (emphasis in original); <u>see also Malley</u>, 475 U.S. at 342 ("We reemphasize that our role is to interpret the intent of Congress in enacting § 1983, not to make a freewheeling policy choice, and that we are guided in interpreting Congress' intent by the common-law tradition.").

To follow the dissent's path and disregard both the Court's long stated approach, and the common law, when interpreting "a statute, enacted by Congress, which `on its face does not provide for <u>any</u> immunities,'" <u>id.</u>, would indeed be in the dissent's words, "nothing but the rawest exercise of [judicial] power."

Judges Murnaghan, Ervin, Hamilton, and Michael join in this opinion.

LUTTIG, Circuit Judge, dissenting:

With today's evenly-divided decision to deny rehearing <u>en banc</u> in this case, <u>In re: Allen</u>, 106 F.3d 582 (4th Cir. 1997), every state official in this circuit who claims entitlement to qualified immunity must affirmatively prove, <u>as a threshold burden to proving that he did not violate the plaintiff's clearly established federal constitutional or statutory rights</u>, that he also did not exceed the scope of his authority under <u>state law</u>. And, now, every district court in such cases must <u>first</u> resolve whether the defendant state official acted within the scope of his state law authority, before proceeding even to address the heretofore only relevant question under <u>Harlow</u> v. <u>Fitzgerald</u>, 457 U.S. 800 (1982), of whether the defendant violated a clearly established federal constitutional or statutory right of which a reasonable official would have known. (Indeed, here, although the panel addresses itself for

13

pages to the intricacies of West Virginia state law, it never even considers the question of whether McGraw violated BGB's clearly established constitutional or statutory rights in the course of denying McGraw's qualified immunity claim under section 1983, <u>see</u> 106 F.3d at 590 n.2.)

The panel's unanimous decision thus erects for our circuit an entirely new framework for analyzing qualified immunity claims by state officials -- on the strength of what even the panel can characterize at most only as isolated "statements" that qualified immunity protects only official action (none of which, even on its face, arguably supports the panel's holding) from several Supreme Court opinions (all of which pre-date <u>Harlow</u> and address absolute, not qualified, immunity). And, as if to add insult to injury, this new framework is created and imposed in a case in which the issue was not even presented, the district court having treated the issue only conclusorily. <u>See Better Government Bureau, Inc.</u> v. <u>McGraw</u>, 904 F.Supp. 540, 553 n.17 (S.D.W.Va. 1995). The panel thus addresses with a thirty page opinion an issue mentioned passingly by the district court in only a footnote, and consigns to a footnote the district court's principal holding that there existed a factual dispute as to whether McGraw acted with the requisite retaliatory motive to violate the plaintiff's clearly established First Amendment rights, <u>see Allen</u> , 106 F.3d at 590 n.2 -- and this, without even a note of explanation as to why it does not "simply follow the Supreme Court's mandate [that] when a district court denies summary judgment because of a purely factual question that decision is not immediately appealable." <u>See Elliott</u> v. <u>Leavitt</u>, 105 F.3d 174, 184 (4th Cir. 1997) (Motz, J., dissenting from denial of rehearing <u>en banc</u>).

In erecting this new framework within which state law is <u>always</u> relevant and often <u>dispositive</u> of a defendant's federal right to qualified immunity, the panel quite obviously misunderstands both section 1983 and the immunity defense of <u>Harlow</u>. Section 1983 provides a federal cause of action against persons acting under color of state law for conduct that violates federal rights. Under <u>Harlow</u>, official immunity is available as against this federal cause of action if the defendant official did not violate clearly established federal constitutional or statutory rights. Nothing else is required for entitlement to the defense and nothing else need be shown. Whether a defendant violated state

14

law, whether he clearly violated state law, or whether he acted outside of state law, is never determinative of this federal immunity defense, because an official may lose his immunity only if he violates the statutory or other rights which give rise to the cause of action sued upon. Because the rights which give rise to the section 1983 cause of action are solely federal rights -- namely, the federal Constitution and federal statutes -- it follows that an official can never lose his immunity through the violation of state law (even clear state law), or even through the failure to act within that law. He forfeits his official immunity <u>only</u> through the violation of clearly established federal law, as <u>Harlow</u> held. State law may on occasion provide <u>the basis</u> for the right that gives rise to a cause of action under section 1983, such as where it creates a property right protected under the due process clause, but state law does not, and can never, provide the right that gives rise to the cause of action under section 1983.

The Supreme Court so held in <u>Davis</u> v. <u>Scherer</u>, 468 U.S. 183 (1984), which the panel opinion does not even so much as cite. In <u>Davis</u>, the court of appeals had held that an official loses his qualified immunity if he violated clear state law, even if he did not violate clearly established federal constitutional or statutory rights, just as the panel held in the case <u>sub judice</u> that, regardless of whether an official violated clearly established federal rights, an official is not entitled to immunity if he acted outside the scope of his state law authority. The appeals court had reasoned, as did the panel in the present case, that the violation of clearly established federal rights was not the "sole way" to forfeit qualified immunity, <u>see id</u>. at 188, and it had failed, as did the panel here, even to discuss the issue of whether the officials violated the plaintiff's federal rights, <u>id</u>. at 189.

The Supreme Court reversed the court of appeals and held that a state official does not forfeit his qualified immunity <u>even by violating clearly established state law</u>, <u>id</u>. at 194. Rather, said the Court,

> [a] plaintiff who seeks damages for violation of constitutional or statutory rights may overcome the defendant official's qualified immunity <u>only by showing that those rights were clearly established at the time of the conduct at issue</u>.

<u>Id</u>. at 197 (emphasis added).

15

Notably, the Court began its opinion by reaffirming its holding in Harlow that, beyond "the `objective reasonableness of [an official's] conduct as measured by reference to clearly established law,'" "[n]o other `circumstances' are relevant to the issue of qualified immunity." Id. at 191 (citation omitted; emphasis added). And it noted that, even before Harlow, its precedents "had made clear that, under the `objective' component of the good-faith immunity test,`an official would not be held liable in damages under § 1983 unless the constitutional right he was alleged to have violated was `clearly established' at the time of the violation." Id. at 194 (citations omitted; emphasis in original).

The Court acknowledged that the proposition that an official should lose his immunity by violating clear state law was "appealing," but, it reminded, in determining what factors are and are not to be considered in deciding qualified immunity claims, a choice must be made "between the evils inevitable in any available alternative." Id. at 195 (quoting Harlow, 457 U.S. at 813-14). The Court then went on to explain that such a submission, "if adopted, would disrupt the balance that [the Court's] cases strike between the interests in vindication of citizens' constitutional rights and in public officials' effective performance of their duties." Id.

Invoking reasoning that is equally dispositive of the question whether a state official loses his immunity by acting outside the scope of his state law authority, the Court stated categorically and unambiguously that

> officials sued for violation of rights conferred by a statute or regulation, like officials sued for violation of constitutional rights, do not forfeit their immunity by violating some other statute or regulation. Rather, these officials become liable for damages only to the extent that there is a clear violation of the statutory rights that give rise to the cause of action for damages. And if a statute or regulation does give rise to a cause of action for damages, clear violation of the statute or regulation forfeits immunity only with respect to damages caused by that violation. In the present case, as we have noted, there is no claim that the state regulation itself or the laws that authorized its promulgation create a cause

16

of action for damages or provide the basis for an action brought under § 1983.

> . . . <u>Neither federal nor state officials lose their immunity by violating the clear command of a statute or regulation -- of federal or of state law -- unless that statute or regulation provides the basis for the cause of action sued upon</u> .

<u>Id</u>. at 194 n.12 (first emphasis in original) (second and third emphases added).

In fact, the entirety of the Court's reasoning in <u>Davis</u> is strikingly applicable to the claim that an official loses his federal immunity when he acts outside the scope of his state authority. In the course of identifying the "evils" that would follow upon making state law generally relevant to <u>Harlow</u>'s federal qualified immunity inquiry, the Court went on to explain, for example, that,

> under appellee's submission [that an official is stripped of qualified immunity by violating a clear state statute or regulation], officials would be liable in an indeterminate amount for violation of <u>any</u> constitutional right-- one that was not clearly defined or perhaps not even foreshadowed at the time of the alleged violation -- merely because their official conduct also violated some statute or regulation. <u>And, in § 1983 suits, the issue whether an official enjoyed qualified immunity then might depend upon the meaning or purpose of a state administrative regulation, questions that federal judges often may be unable to resolve on summary judgment</u>.

<u>Id</u>. at 195 (first emphasis in original; second emphasis added). Even the policy considerations which the Court viewed as supportive of its holding apply with full force to the claim uncritically embraced by the panel. If <u>Harlow</u>'s official immunity were to turn upon whether an official acted within his state law authority,

> [f]ederal judges would be granted large discretion to extract from various statutory and administrative codes those provi-

17

sions that seem to them sufficiently clear or important to
warrant denial of qualified immunity.

Id. And just as surely would follow the additional burdens both for
the federal courts and for those officials who claim qualified immu-
nity. As the Court observed:

> [S]uch judgments fairly could be made only after an exten-
> sive inquiry into whether the official in the circumstances of
> his decision should have appreciated the applicability and
> importance of the rule at issue. It would become more diffi-
> cult, not only for officials to anticipate the possible legal
> consequences of their conduct, but also for trial courts to
> decide even frivolous suits without protracted litigation.
>
> . . . .
>
> Officials would be required not only to know the applicable
> regulations, but also to understand the intent with which
> each regulation was adopted. Such an understanding often
> eludes even trained lawyers with full access to the relevant
> legislative or administrative materials. It is unfair and
> impracticable to require such an understanding of public
> officials generally.

Id. at 195-96 & n.13.

Indeed, the evident burdens that will be imposed by the unprece-
dented new proof scheme put in place by the panel today, not only
on those state officers who will claim qualified immunity but also on
the courts of this jurisdiction which decide these claims daily, are
enormous. The defendant officials of course will be required to mar-
shal for presentation to the federal court all of the state statutes, regu-
lations, and caselaw arguably relevant to the performance of their
state law duties. And they will then be required to argue to the federal
court, from those authorities, that they were acting within the scope
of their state law duties, duties which often will not be defined with
anything approaching the kind of specificity with which federal duties
are defined.

18

The federal courts, for their part, will now be obliged to conduct what will essentially be mini-trials on the question of whether the defendant was acting within the scope of his state law duties, a responsibility which will require these federal officers to immerse themselves in the intricacies of state statutes, regulations, and caselaw. The extent to which the federal courts will be embroiled in peculiarly state law questions is confirmed by the panel's holding in this case, that even the complete absence of state law prohibiting the conduct in question does not prevent the federal court from concluding that the state official exceeded the scope of his clearly defined state law authority. See Allen, 106 F.3d at 594-98.

It goes without saying that if the district court ultimately concludes that the defendant is acting outside the scope of his duties, or even that there is a dispute of material fact as to whether he was acting within or without his authority, then an interlocutory appeal of the district court's denial of qualified immunity will follow. Upon appeal, we will be required to parse the same body of state law in the course of our review of the district court's judgment. If we determine that the official did exceed the scope of his discretionary authority, then a trial on the merits of the plaintiff's claim will proceed.

And all of this before any court even considers the only heretofore relevant question for purposes of determining the availability of qualified immunity under section 1983 -- whether the defendant violated the plaintiff's clearly established federal rights .

Of course, wholly apart from the burdens imposed, the panel's novel holding will thrust the federal courts into the minutia of state and local governments, as the cumbersome litigation it spawns forces these courts to define -- often in the absence of state judicial authority and based upon what frequently will be vague laws -- the perimeters and contours of the duties of the myriad state and local officials subject to suit under section 1983. By deciding the decidedly federal question of official immunity by resort to case-by-case, common-law-like adjudication of state scope-of-authority claims, the governmental structures of the state and local governments within this circuit will, over time, become edifices constructed by the federal judiciary. The disposition of this case only serves to highlight this inevitable consequence of the panel's new framework. The panel confidently holds

19

that the West Virginia Attorney General <u>clearly exceeded</u> his undisputed power to "establish a program" for the education of consumers when he "established a corporation" for such purpose, thus substituting its judgment, which is based upon a distinction that appears nowhere in any statute, regulation, or judicial decision of the State of West Virginia, for that of a man who previously served as a member of the West Virginia Supreme Court. The panel may be right or wrong as to the construction of the State Attorney General's powers that it superimposes on the State and its officials. However, to hold as a matter of law that the West Virginia Attorney General not only lacks such power, but that it is <u>clearly established</u> that he lacks such power, when he is expressly empowered to establish programs and nowhere forbidden to establish government corporations, is nothing but the rawest exercise of federal power.

That the panel has begun to appreciate the consequences of its holding for the federal courts and for the states is evident in its scrupulous avoidance of any discussion of the implications of that holding for either in its unusual opinion concurring in the denial of rehearing <u>en banc</u>. Indeed, in that opinion, the concurrence not only misleadingly avoids mention of state law, but revealingly buries its brief mention of the case over which the dissent has joined issue with the panel (<u>Davis</u>) in a lone paragraph at the very end of its opinion -- a paragraph in which the reasoning invoked by the Supreme Court in <u>Davis</u> is nowhere discussed and the case is presumptively distinguished on grounds of an unexplained (and, I believe, nonexistent) distinction between, on the one hand, a mere claim to qualified immunity "in the first instance," and an actual entitlement to qualified immunity which is subject to "defeat," on the other.

Indeed, the full extent to which the panel has departed from the principles that underlay the doctrine of qualified immunity, and especially the federalism principles implicated when state officials are named as party defendants, is made painfully clear in the concurrence's startling <u>post hoc</u> assertion that it now believes that <u>Wyatt</u> v. <u>Cole</u>, 504 U.S. 158 (1992), which was not even discussed in the panel opinion, is analogous to the case at hand and that, because of the purported distinction noted above, <u>Davis</u>, which also was not discussed in the panel opinion, "dealt with an entirely different question." Concurrence at 11; <u>see also id</u>. at 10 (noting also that <u>Davis</u> addressed only a single

20

"discrete" question); compare id. with Wyatt, 504 U.S. at 168-69 ("The question on which we granted certiorari is[the] very narrow one" of whether private individuals enjoy qualified immunity under Harlow when "faced with § 1983 liability for invoking a state replevin, garnishment, or attachment statute.").

It would, of course, be difficult to imagine a case less like the case before us than Wyatt. In Wyatt, the Court held that private individuals were not entitled to public, or official , immunity -- that only public officials were entitled to official immunity -- because "the rationales mandating qualified immunity for public officials are not applicable to private parties." Id. at 167 (citations deleted). "[T]he qualified immunity recognized in Harlow acts to safeguard government, and thereby to protect the public at large, not to benefit its agents[,]" the Court observed, and "[t]hese rationales are not transferable to private parties." Id. at 167-68 (emphasis added). Elaborating upon the obvious distinction between private persons and public officials, which the concurrence today disavows, the Supreme Court explained that,

> [u]nlike school board members or Presidential aides, private parties hold no office requiring them to exercise discretion; nor are they principally concerned with enhancing the public good. Accordingly, extending Harlow qualified immunity to private parties would have no bearing on whether public officials are able to act forcefully and decisively in their jobs or on whether qualified applicants enter public service. Moreover, unlike with government officials performing discretionary functions, the public interest will not be unduly impaired if private individuals are required to proceed to trial to resolve their legal disputes. In short, the nexus between private parties and the historic purposes of qualified immunity is simply too attenuated to justify such an extension of our doctrine of immunity.

Id. at 168 (citations deleted). Because "[q]ualified immunity strikes a balance between compensating those who have been injured by official conduct and protecting government's ability to perform its traditional functions," id. at 167, Wyatt's holding denying qualified immunity to private persons plainly is of no relevance whatsoever to the question of whether a given state official is or is not entitled to

21

such immunity -- a question whose resolution has profound consequences for the principles of federalism that inform application of the doctrine of qualified immunity to state officials subject to section 1983.

The concurrence's reliance upon the Supreme Court's recent decision in Clinton v. Jones, No. 95-1853, 1997 WL 273679 (U.S. May 27, 1997), is misplaced for essentially the same reasons. In invoking the Court's decision in Jones, and in particular its dicta that the Court has "never suggested that the President, or any other official, has an immunity that extends beyond the scope of any action taken in an official capacity," id. at *8, the concurrence once again fails to recognize the distinction between, and thus mistakenly equates, action within one's official capacity and action within one's scope of authority. In Jones, the Supreme Court was simply making the unexceptionable observation that when an individual who happens to be a public official acts not in his official capacity, but rather as a private individual (or an individual official who either is charged with conduct that occurred prior to the time when he assumed public office or prior to the time when he assumed federal office), he is not entitled to official immunity. That, of course, is quite evidently different from the panel's holding that an official who acts in his official capacity but outside the scope of his duties is not entitled to immunity. Jones, in any event, is yet another case of absolute, rather than qualified, immunity relied upon by the panel and concurrence, and, at that, one which, in stark contrast to the case here, in no way raises the specter of federal judicial intervention into classic state law questions.

Nor, notwithstanding the concurrence's protestations, does the common law support the panel's holding. The common law authorities regarding trespass, malicious prosecution, and false imprisonment relied upon by the panel do not even address official immunity for unlawful actions. Even if they did, they would have limited applicability to modern qualified immunity, which, unlike absolute immunity, at this point bears little resemblance to the common law. As the Court in Wyatt explained, quoting Anderson v. Creighton, 483 U.S. 635, 645 (1987), Harlow "completely reformulated qualified immunity along principles not at all embodied in the common law." And, as Justice Kennedy further explicated in his opinion in that case, which the concurrence ironically relies upon here:

22

> Our immunity doctrine is rooted in historical analogy, based on the existence of common-law rules in 1871, rather than in "freewheeling policy choice[s]." In cases involving absolute immunity we adhere to that view, granting immunity to the extent consistent with historical practice. In the context of qualified immunity for public officials, however, we have diverged to a substantial degree from the historical standards.

Wyatt, 504 U.S. at 170 (Kennedy, J., concurring) (citations deleted).

Rather than acquiesce in today's unsupported and insupportable reformulation of Harlow's qualified immunity inquiry, I would grant the petition for rehearing en banc and dispose of the appellee's argument, that a public official loses his entitlement to federal qualified immunity if he exceeds the scope of his state law authority, in precisely the same way the Supreme Court disposed of the doctrinally indistinguishable claim that federal qualified immunity is lost if an official violates clearly established state law. I would acknowledge that "[o]n its face . . . the claim is not without some force," but I would "decline to adopt it," Davis, 468 U.S. at 194, because of its fundamental incompatibility with established qualified immunity doctrine and because of the unfathomable consequences that its acceptance would (and now will) have for a framework carefully designed by the Supreme Court to result in the expeditious resolution of suits against public officials for the reasonable exercise of their discretionary judgments.

Accordingly, I dissent from the court's decision to deny rehearing en banc.

Chief Judge Wilkinson and Judges Russell, Widener, Wilkins, and Williams join in this opinion.

23