HOLMES, Circuit Judge,
concurring in the judgment
I concur but only in the judgment. I respectfully disagree with the Lead Opinion’s (i.e., the opinion of Judge Hartz) decision to apply a variant of the “scope-of-authority exception to qualified immunity,” L. Op. at 1211, in resolving this case.[1] The Supreme Court and our court have consistently engaged in a two-pronged inquiry centered on federal law when a defendant asserts a qualified-immunity defense: specifically, we ordinarily ask (in substance) whether the plaintiff can demonstrate (1) that the defendant violated his federal constitutional rights, and (2) that the rights in question were clearly established under federal law at the time of the defendant’s conduct. This two-pronged inquiry constitutes settled law, and it does not contemplate — and, indeed, makes no room for— an antecedent, potentially dispositive examination of whether the defendant acted within the scope of his authority, as de *1220 fined by state law; yet, the Lead Opinion’s application of the scope-of-authority exception would require us to engage in precisely such an examination. As such, the Lead Opinion’s application of this exception is legally erroneous; that is, the exception should be rejected and not applied at all to these facts. And, lest there be any confusion, the impropriety of the Lead Opinion’s application of this exception is not diminished in any meaningful sense by the Lead Opinion’s equivocation at the precipice about whether our court should formally endorse the exception. In this regard, the Lead Opinion states that “[t]he author ... would not decide whether to recognize or reject a scope-of-authority exception but would hold that were this court to recognize a scope-of-authority exception to qualified immunity, the lack of authority under state law would have to be clearly established at the time of the challenged action.” Id. at 1211-12 However, this vacillation is cold comfort to those concerned about the improper erosion of the settled two-pronged inquiry for addressing the qualified-immunity defense.[2] Whether it formally adopts the exception or not, the Lead Opinion’s application of it on these facts may cause such an erosion.
In sum, I respectfully disagree with the Lead Opinion’s decision to apply a scope-of-authority exception here. For the reasons explicated below, however, I nevertheless concur in the judgment.
I
A
By way of overview, under the scope-of-authority exception applied by the Lead Opinion, we must first consider in qualified-immunity cases whether the government official exceeded the scope of his authority under clearly established state law. See L. Op. at 1216 (noting “that if the exception were to be adopted, it should be limited to cases in which there was clearly established state law that the government official’s actions exceeded the scope of authority” (emphasis added)). If the official did exceed it, he has effectively forfeited his right to be heard on the merits of his federal qualified-immunity defense. In other words, he has lost his right to have a federal court determine — under the settled two-pronged test that the Supreme Court has articulated and our precedent has faithfully applied — whether he violated clearly established federal law. If he has not exceeded the scope of his authority, the federal court ordinarily must proceed to resolve the merits of the official’s qualified-immunity defense under the two-pronged test.
Applying this framework, the Lead Opinion determines that Defendant Donald Gallegos (“DA Gallegos”) survives the antecedent (i.e., threshold) scope-of-authority inquiry and that the district court should assay and resolve the merits of his qualified-immunity defense. More specifically, *1221 the Lead Opinion concludes that Plaintiff David N. Stanley (“Mr. Stanley”) “cannot escape” the court’s inquiry into the merits of DA Gallegos’s qualified-immunity defense through the antecedent application of the scope-of-authority exception, L. Op. at 1219, because DA Gallegos did not exceed “his authority under clearly established New Mexico law,” id. at 1218. Based on this conclusion, the Lead Opinion reverses the district court: although that court also applied the scope-of-authority exception, in the Lead Opinion’s view (and that of Judge Matheson’s separate concurrence), it erred in finding that DA Gallegos had acted clearly outside the scope of his authority and, therefore, forfeited an examination of the merits of his qualified-immunity defense. The Lead Opinion remands for the district court to assess, in the first instance, whether DA Gallegos is entitled to qualified immunity based on clearly established federal law.
I concur but only in the judgment. In my view, the scope-of-authority exception that the Lead Opinion applies upends our federally focused qualified-immunity standard, by erroneously grafting onto it an antecedent state-law inquiry that becomes “always relevant and often dispositive of a[n] [official’s] federal right to qualified immunity.” In re Allen (Allen II), 119 F.3d 1129, 1135 (4th Cir. 1997) (third emphasis added) (Luttig, J., dissenting from the denial of rehearing en banc).[3] Like my colleagues, I would reverse the district court’s summary-judgment order — hence, my concurrence in the result. But my reason is more fundamental: the district court should never have applied a scope-of-authority exception in the first place. I would remand for the district court to address DA Gallegos’s entitlement to qualified immunity under the established two-pronged qualified-immunity decisional framework.
B
1
42 U.S.C. § 1983, entitled “Civil action for deprivation of rights,” provides that:
[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....
42 U.S.C. § 1983 (emphases added). In other words, § 1983 creates a cause of action against state officials (or, individuals acting under color of state law) for “violations] of federal rights.” Crawford-El v. Britton, 523 U.S. 574, 595, 118 S.Ct. 1584, 140 L.Ed.2d 759 (1998) (emphasis added); accord Haywood v. Drown, 556 U.S. 729, 731, 129 S.Ct. 2108, 173 L.Ed.2d 920 (2009) (explaining that § 1983 creates an avenue for vindication of federal constitutional guarantees); Conn v. Gabbert, 526 U.S. 286, 290, 119 S.Ct. 1292, 143 L.Ed.2d 399 (1999) (“Section 1983 provides a federal cause of action against any person who, acting under color of state law, deprives another of his federal rights.” (emphasis added)); Howlett By & Through Howlett v. Rose, 496 U.S. 356, 358, 110 S.Ct. 2430, 110 L.Ed.2d 332 (1990) (same); Maine v. Thi- *1222 boutot, 448 U.S. 1, 4-11, 100 S.Ct. 2502, 65 L.Ed.2d 555 (1980) (same).
Nevertheless, recognizing the “social costs” of litigation and that the “fear” of suit might “dampen” public officials’ “unflinching discharge of their duties,” the Supreme Court has long recognized that public officials enjoy qualified immunity from certain § 1983 liability. Harlow v. Fitzgerald, 457 U.S. 800, 814, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982) (quoting Gregoire v. Biddle, 177 F.2d 579, 581 (2d Cir. 1949)); see id. at 816, 102 S.Ct. 2727 (explaining that the “values” that underpin the protections of qualified immunity include “the general costs of subjecting officials to the risks of trial — distraction of officials from their governmental duties, inhibition of discretionary action, and deterrence of able people from public service”); see also Elder v. Holloway, 510 U.S. 510, 514, 114 S.Ct. 1019, 127 L.Ed.2d 344 (1994) (“The central purpose of affording public officials qualified immunity from suit is to protect them ‘from undue interference with their duties and from potentially disabling threats of liability.’ ” (quoting Harlow, 457 U.S. at 806, 102 S.Ct. 2727)); Siegert v. Gilley, 500 U.S. 226, 232, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991) (explaining that qualified immunity endeavors “to spare a defendant not only unwarranted liability, but unwarranted demands customarily imposed upon those defending a long drawn out lawsuit”).
In Harlow, for example, the Supreme Court held that “government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established [federal] statutory or constitutional rights of which a reasonable person would have known.” 457 U.S. at 818, 102 S.Ct. 2727. The Court underscored that the proper focus was on “the objective reasonableness of an official’s conduct, as measured by reference to clearly established [federal] law.” Id.; see, e.g., Messerschmidt v. Millender, 565 U.S. 535, 546, 132 S.Ct. 1235, 182 L.Ed.2d 47 (2012) (“[Wjhether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the ‘objective legal reasonableness’ of the action, assessed in light of the legal rules that were ‘clearly established’ at the time it was taken.” (quoting Anderson v. Creighton, 483 U.S. 635, 639, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987))). More recently, in Mullenix v. Luna, — U.S. —, 136 S.Ct. 305, 193 L.Ed.2d 255 (2015), the Supreme Court reaffirmed the same principle,[4] stating that “[t]he doctrine of qualified immunity shields officials from civil liability so long as their conduct ‘does not violate clearly established [federal] statutory or constitutional rights of which a reasonable person would have known.’” Id. at 308 (quoting Pearson v. Callahan, 555 U.S. 223, 231, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009)). Notably, in the qualified-immunity context, the Court has made clear that Harlow's objective-reasonableness inquiry is the only germane one; “No other ‘circumstances’ are relevant to the issue of qualified immunity.” Davis v. Scherer, 468 U.S. *1223 183, 191, 104 S.Ct. 3012, 82 L.Ed.2d 139 (1984) (recognizing Harlow’s partial abrogation of the “totality of the circumstances” test of Scheuer v. Rhodes, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974)).
2
More specifically, following Harloiv, the Court considered in Davis whether “a state official loses his qualified immunity from suit for deprivation of federal constitutional rights” if the official “violated the clear command of a state administrative regulation.” 468 U.S. at 185, 104 S.Ct. 3012. Significantly, the party arguing for an affirmative answer to this inquiry— Plaintiff-Appellee — “ma[de] no claim that the appellants’ violation of the state regulation either is itself actionable under § 1983 or bears upon the claim of constitutional right that appellee asserts under § 1983.” Id. at 193, 104 S.Ct. 3012. Furthermore, Plaintiff-Appellee recognized that whether officials are entitled to qualified immunity under § 1983, in light of Harlow, turns on whether they have acted in an objectively reasonable manner under clearly established federal law. See id. at 191, 193, 104 S.Ct. 3012.
Nevertheless, Plaintiff-Appellee argued that an official’s “fail[ure] to comply with a clear state regulation,” “although not itself the basis of suit, should deprive the official of qualified immunity from damages for violation of other statutory or constitutional provisions.” Id. (emphases added). In effect, Plaintiff-Appellee contended that, “because officials fairly may be expected to conform their conduct to [the] legal norms,” id. found in state statutes and regulations, their violation of a clear state statute or regulation should be dis-positive “in deciding claims of qualified immunity,” see id. at 195, 104 S.Ct. 3012. See also id. at 191, 104 S.Ct. 3012 (noting that, contrary to the Court’s “prior cases,” the district court adopted the view that even “absent a violation of clearly established constitutional rights, appellants’ violation of the state administrative regulation — although irrelevant to the merits of appellee’s underlying constitutional claim — was decisive of the qualified immunity question” (emphasis added)).
Significantly for present purposes, the Davis Court rejected Plaintiff-Appellee’s argument in full. It underscored that Harlow’s, objective-reasonableness inquiry makes an official’s liability under § 1983 depend on whether he violated clearly established federal law. See id. at 194, 104 S.Ct. 3012. Thus, the Court flatly stated, “Officials sued for constitutional violations do not lose their qualified immunity merely because their conduct violates some [state] statutory or administrative provision.” Id. The Court reasoned that accepting Plaintiff-Appellee’s approach, under which a violation of a clear state statute or regulation would amount to an additional “circumstance[ ]” in the qualified-immunity analysis,
would disrupt the balance that our cases strike between the interests in vindication of citizens’ constitutional rights and in public officials’ effective performance of their duties. The qualified immunity doctrine recognizes that officials can act without fear of harassing litigation only if they reasonably can anticipate when their conduct may give rise to liability for damages and only if unjustified lawsuits are quickly terminated. Yet, under appellee’s submission, officials would be liable in an indeterminate amount for violation of any constitutional right — one that was not clearly defined or perhaps not even foreshadowed at the time of the alleged violation — merely because their official conduct also violated some statute or regulation.
Id. at 195, 104 S.Ct. 3012 (citations omitted). The Court unequivocally declined to go down this path with Plaintiff-Appellee: *1224 “A plaintiff who seeks damages for violation of constitutional or statutory rights may overcome the defendant official’s qualified immunity only by showing that those rights were clearly established at the time of the conduct at issue.” Id. at 197, 104 S.Ct. 3012 (emphasis added).
In my view, Davis makes clear that the Lead Opinion’s application of the scope-of-authority exception is wrong-headed. Akin to Plaintiff-Appellee in Davis, the Lead Opinion erroneously permits an additional “circumstance[ ]” to inform the qualified-immunity calculus — viz., a threshold scope-of-authority exception — and makes it, in many instances, “decisive of the qualified immunity question.” Davis, 468 U.S. at 191, 104 S.Ct. 3012 (emphasis added). That is, if an official acts outside of his scope of authority, as defined by clearly established state law, he “forfeits” his right to have a federal court in a § 1983 action consider the merits of his defense that his actions did not violate clearly established federal law. However, Davis leaves no doubt that this approach is erroneous: aside from Harlow’s objective-reasonableness inquiry, “[n]o other ‘circumstances’ are relevant to the issue of qualified immunity.” Id. at 191, 104 S.Ct. 3012.[5] And officials do not “forfeit their immunity” defense simply because they are shown to have acted outside the scope of their authority under state law. See id. at 194 n.12, 104 S.Ct. 3012.
Acknowledging Davis, the Lead Opinion ruminates regarding its impact on a scope-of-authority exception (if adopted) and, in this regard, it asks some interesting and thoughtful questions. See L. Op. at 1214 (“Why should qualified immunity under [§ 1983] depend on whether the government employee complied with state law?”); id. at 1215 (noting that “it is unclear how to draw the line between conduct that violates state law (which Davis said is irrelevant to qualified immunity) and conduct that is unauthorized by state law (which is the purview of the scope-of-authority exception)”). But, tellingly, the Lead Opinion offers no answers that can reconcile in a principled and persuasive manner a threshold scope-of-authority rubric with the holding and reasoning of Davis, and I cannot conceive of any. Rather than “pause before adopting a doctrine of such uncertain scope that is so in tension with controlling Supreme Court authority,” L. Op. at 1215-16, the Lead Opinion should reject the scope-of-authority exception outright and conclude not only that it is “in tension with” that authority, but also contrary to it.
In sum, under Harlow and Davis, an official should be granted qualified immunity so long as he “did not violate clearly established federal constitutional or statutory rights[;] [n]othing else is required for entitlement to the defense and nothing else need be shown.” Allen II, 119 F.3d at 1135 (Luttig, J., dissenting from the denial of rehearing en banc). Despite this established decisional framework, the Lead *1225 Opinion suggests, through its application of a scope-of-authority exception, that there is a threshold condition that an official must satisfy before a federal court can even consider whether .he has violated clearly established federal law. In my view, controlling Supreme Court precedent leaves no analytic space for such an antecedent condition. Indeed, it is indistinguishable in material respects from the additional circumstance — i.e., a violation of a clear state statute or regulation — that Plaintiff-Appellee sought unsuccessfully in Davis to interject into the qualified-immunity analysis as a dispositive factor. Accordingly, I could reject on this basis alone the Lead Opinion’s approach.[6] But there is more.
C
Guided by Supreme Court precedent, we have repeatedly and unfailingly reviewed qualified-immunity assertions under a two-part analysis, considering “(1) [whether] the official violated a [federal] statutory or constitutional right, and (2) [whether] the right was ‘clearly established’ at the time of the challenged conduct.” Quinn v. Young, 780 F.3d 998, 1004 (10th Cir. 2015) (quoting Ashcroft v. al-Kidd, 563 U.S. 731, 735, 131 S.Ct. 2074, 179 L.Ed.2d 1149 (2011)); see e.g., Cox, 800 F.3d at 1245 (“[B]y asserting the qualified-immunity defense, Sheriff Glanz triggered a well-set-tied twofold burden that Ms. Cox was compelled to shoulder: not only did she need to rebut the Sheriffs no-eonstitutional-violation arguments, but she also had to demonstrate that any constitutional violation was grounded in then-extant clearly established law.”). We have never even intimated that this inquiry into federal law should be preceded by a potentially dispositive examination of state law; yet, that is precisely what the Lead Opinion’s application of the scope-of-authority exception would require.
Indeed, the Lead Opinion candidly acknowledges that its proposed exception has no footing in our controlling caselaw. L. Op. at 1215 (“No binding precedent of this court has adopted the scope-of-authority exception to qualified immunity.”). And, in my view, we would be deviating without authority from our precedent — which endorses and applies the two-part qualified-immunity framework outlined supra — if we adopt this exception here. See, e.g., In re Smith, 10 F.3d 723, 724 (10th Cir. 1993) (“We are bound by the precedent of prior panels absent en banc reconsideration or a superseding contrary decision by the Supreme Court.”); see also United States v. Meyers, 200 F.3d 715, 720 (10th Cir. 2000) (“Under the doctrine of stare decisis, this panel cannot overturn the decision of another panel of this court.”).[7]
*1226 Indeed, across the wide landscape of our § 1983 qualified-immunity jurisprudence, I found only fleeting references to the scope of an official’s authority, and these references do not even begin to provide a foundation for the scope-of-authority exception applied by the Lead Opinion.[8] As to these references, I highlight the two unpublished (i.e., nonprecedential) cases cited by the Lead Opinion: Robbin v. City of Santa Fe, 583 Fed.Appx. 858 (10th Cir. 2014) (unpublished), and Cox v. Cache County, 664 Fed.Appx. 703 (10th Cir. 2016) (unpublished). The Lead Opinion suggests that these two cases apply a scope-of-authority exception. L. Op. at 1214-15. I disagree. These cases allude to an official’s scope of authority in their discussions of qualified immunity, but only under the established two-part analysis; they do not endorse an additional, antecedent condition to the undertaking of this analysis. In other words, these cases do not even intimate that the merits consideration of an official’s qualified-immunity defense under federal law is conditioned on an antecedent determination that he has not exceeded the scope of his authority under state law.
For example, in Robbin, a police officer brought a § 1983 action for “effective[ ]” termination without procedural due process, after his employer demoted him without following the “protections” afforded a non-exempt employee. 583 Fed.Appx. at 859-60. The police chief employer, however, determined that the plaintiff constituted an exempt employee, subject to demotion without procedural protections. See id. at 860. Consequently, the parties’ dispute centered on the scope of the police chiefs authority to determine classifications for police officers. On that issue, the district court found that the police chief was entitled to qualified immunity, because “a reasonable officer in [his] position would not have known that his [classification] actions [extended] clearly beyond his established authority.” Id. at 862.
On appeal, the Robbin panel articulated the following statement of the relevant *1227 law: “[U]nless the constitutional right at issue is clearly established, the defendant receives the protection of qualified immunity. When evaluating whether the constitutional right was clearly established, ‘the touchstone of [the] inquiry is whether the officers were on notice that their conduct was unlawful.’ ” Id. at 864 (quoting Roska ex rel. Roska v. Peterson, 328 F.3d 1230, 1248 (10th Cir. 2003)). Applying this established qualified-immunity decisional framework, the panel affirmed, concluding “that [the police chief] did not act in such a way that a reasonable official in his position would have understood his actions treating [a] police captain as an exempt position to be outside of his authority.” Id. at 865.
Notably, the panel referenced the police chiefs authority in the context of discussing whether his conduct violated clearly established federal law, such that he would not be entitled to qualified immunity, see id. at 864-65 — that is, in addressing the second prong of the established qualified-immunity standard. Robbin did not, as the Lead Opinion’s approach would require, assay the scope of the police captain’s authority as part of a threshold inquiry into whether he was even eligible to seek the protection of the qualified-immunity defense. To be sure, the Robbin court did refer to the scope-of-authority exception that some of “our sister circuits” have allegedly adopted under which “qualified immunity also may be inappropriate.” Id. at 864 (emphasis added). However, this reference is patently dicta under the circumstances of Robbin since the court never purported to apply any such scope-of-authority exception. Therefore, this element of Robbings, analysis gives me no pause. In short, any reliance that the Lead Opinion places on Robbin is misplaced.
Similarly, in Cox, a private Utah beekeeper brought a § 1983 action against a county bee inspector, alleging that the county official conducted a warrantless inspection of his beehives. See 664 Fed.Appx. at 704-05. The county official claimed qualified immunity, and the district court agreed. On appeal, the Cox panel recited the traditional Harlow standard, “Qualified immunity shields ‘government officials performing discretionary functions ... from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.’ ” Id. at 705 (alteration in original) (quoting-Harlow, 457 U.S. at 818, 102 S.Ct. 2727). It then proceeded to conclude that the official’s conduct fell within his discretionary authority and that, consequently, the private beekeeper failed to show that the official violated his clearly established Fourth Amendment rights. Id. Nothing in Cox aids the Lead Opinion. Like Robbin, the Cox panel considered the official’s authority as a factor in the traditional qualified-immunity analysis to determine whether he violated clearly established law; it did not use this factor to decide at the threshold whether the officer was eligible to be heard on the merits of his qualified-immunity defense.
Accordingly, neither Robbin nor Cox— the two nonprecedential Tenth Circuit decisions that the Lead Opinion cites to bolster its cause — advance the Lead Opinion’s analysis. And, by the Lead Opinion’s own admission, there is nothing in our controlling precedent that supports this exception. Indeed, as with Davis and its Supreme Court progeny, I actually believe that our controlling Tenth Circuit precedent is to the contrary.
II
For .the foregoing reasons, I disagree with the Lead Opinion’s analysis, in particular, its application of the scope-of-authority exception. I would explicitly reject this exception as contrary to Supreme Court *1228 and Tenth Circuit precedent. Like my colleagues, I would reverse the district court’s judgment. However, I would do so, not because the court applied the scope-of-authority exception improperly, but instead because it applied the exception at all. I respectfully concur in the judgment only.

. Judge Matheson also concurs only in the judgment. Significantly, he "would defer deciding whether this court should adopt a scope-of-authority test for cases brought under 42 U.S.C. § 1983.” Matheson Concurrence at 1228. Judge Matheson does assume, without deciding, that the scope-of-authority test, which the parties employ, is applicable here, and, like the Lead Opinion, then concludes that the district court erred in its application of that test. But, in my view, considering the differing opinions of the panel judges, there is no majority rationale in this case; we all agree only as to the judgment. Accordingly, I refer to Judge Hartz's opinion only as the Lead Opinion, rather than as the majority opinion.

. The Lead Opinion's vacillation is puzzling. It suggests a belief that we are painting on a blank canvas in defining the appropriate analytic rubric for deciding whether defendants are entitled to qualified immunity in lawsuits under 42 U.S.C. §.1983. But, as explicated infra, we are not. In this regard, the Lead Opinion ruminates over the following hypothetical — the answer to which is supposedly “not settled in this circuit”: "Say the violation of federal law was not clearly established, but under state law the action was unauthorized. Does a police officer lose the protection of qualified immunity when he acts outside the scope of his authority?” L. Op. at 1211. This question is clearly answered by our precedent, and the answer is "no,” because a plaintiff must establish under our settled two-pronged inquiry that the federal law was clearly established, and, under the Lead Opinion's hypothetical, the plaintiff cannot do this. See, e.g., Cox v. Glanz, 800 F.3d 1231, 1245 (10th Cir. 2015).

. In discussing the scope-of-authority exception, the Lead Opinion borrows in part from the Fourth Circuit's analysis in In re Allen (Allen I), 106 F.3d 582 (4th Cir. 1997)—a case declined for en banc review by an evenly divided en banc court. In crafting my concurrence, I am guided and persuaded by Judge Luttig’s well-reasoned dissent from the denial of en banc rehearing. See Allen II, 119 F.3d at 1135-40.

. Indeed, a long line of Supreme Court decisions have done so. See, e.g., Wood v. Moss, - U.S. -, 134 S.Ct. 2056, 2061, 188 L.Ed.2d 1039 (2014); Stanton v. Sims, - U.S. -, 134 S.Ct. 3, 4, 187 L.Ed.2d 341 (2013); Ortiz v. Jordan, 562 U.S. 180, 183, 131 S.Ct. 884, 178 L.Ed.2d 703 (2011); Morse v. Frederick, 551 U.S. 393, 429, 127 S.Ct. 2618, 168 L.Ed.2d 290 (2007); Hope v. Pelzer, 536 U.S. 730, 739, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002); Wilson v. Layne, 526 U.S. 603, 609, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999); Johnson v. Fankell, 520 U.S. 911, 914-15, 117 S.Ct. 1800, 138 L.Ed.2d 108 (1997); Behrens v. Pelletier, 516 U.S. 299, 305-06, 116 S.Ct. 834, 133 L.Ed.2d 773 (1996); Buckley v. Fitzsimmons, 509 U.S. 259, 268, 113 S.Ct. 2606, 125 L.Ed.2d 209 (1993); Mitchell v. Forsyth, 472 U.S. 511, 517, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985).

. In Elder, the Court reinforced the point; specifically, it clarified that, under Davis's holding, whether an official has satisfied duties or conditions that are defined by state law is not the focus of the qualified-immunity analysis;
Davis, in short, concerned ... this entirely discrete question: Is qualified immunity defeated where a defendant violates any clearly established duty, including one under state law, or must the clearly established right be the federal right on which the claim for relief is based? The Court held the latter.
510 U.S. at 515, 114 S.Ct. 1019 (second emphasis added). With that explanation of Davis’s holding, the Elder Court stressed that an official’s entitlement to “qualified immunity from [a § 1983] suit” depends on whether the official violated a clearly established "federal right,” not whether the official violated some clearly established duty under state law. Id. at 516, 114 S.Ct. 1019 (emphasis added).

. The Lead Opinion cites some Supreme Court cases where the Court rejected private individuals’ assertions of the qualified-immunity defense. See L. Op. at 1214 (citing Filarsky v. Delia, 566 U.S. 377, 132 S.Ct. 1657, 182 L.Ed.2d 662 (2012); Richardson v. McKnight, 521 U.S. 399, 117 S.Ct. 2100, 138 L.Ed.2d 540 (1997); and Wyatt v. Cole, 504 U.S. 158, 112 S.Ct. 1827, 118 L.Ed.2d 504 (1992)). I do not find these cases remotely apposite to the present one. Indeed, the Lead Opinion itself acknowledges that, in such cases, the Court "emphasized essential differences between private citizens and government officials that apply regardless of whether the official was acting within the scope of authority.” Id. at 1215-16 (emphasis added). Notably, the cited cases do not even address the scope-of-authority exception that the Lead Opinion describes here. Consequently, in my view, these cases are inapposite to the question at hand.

. Even accepting at face value the Lead Opinion's assertion that "over half the circuit courts of appeal appear to have recognized a scope-of-authority exception to the protection of qualified immunity,” L. Op. at 1214, at best, that only proves that the Tenth Circuit is on the other side of a circuit split. It does not provide a basis — absent an en banc proceeding or intervening Supreme Court precedent — for deviating from the clear thrust of *1226 our precedent: viz., that a defendant’s assertion of a qualified-immunity defense triggers only a two-part burden on the plaintiff to establish (1) that his constitutional rights were violated, and (2) that those rights were clearly established. And there are no antecedent or threshold conditions to the application of this qualified-immunity analysis. See, e.g., Cox, 800 F.3d at 1245.

. The Supreme Court’s "cases have recognized that the same qualified immunity rules apply in suits against state officers under § 1983 and in suits against federal officers,” stemming from the Court’s landmark holding in Bivens v. Six Unknown Federal Narcotics Agents, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). Davis, 468 U.S. at 194 n.12, 104 S.Ct. 3012. Therefore, I pause to acknowledge one Tenth Circuit case, involving a Bivens action against federal officers, where fleeting references were made to scope of authority, that is, Pleasant v. Lovell, 876 F.2d 787 (10th Cir. 1989). Pleasant predates the Fourth Circuit’s influential Allen I decision — upon which the Lead Opinion relies in part — and neither the parties, the district court, nor the Lead Opinion relies on its analysis. I mention it for the sake of completeness, but it does not advance the Lead Opinion’s cause. That is because, like the two nonprece-dential decisions of our court discussed infra, Pleasant refers to scope of authority in connection to its undertaking of the established two-part qualified-immunity analysis and, more specifically, its holding regarding the second prong of that analysis which relates to the existence vel non of clearly established law. See Pleasant, 876 F.2d at 803 ("[N]o clearly established law would preclude the [federal officer] defendants from participating with or encouraging [a purported, cooperating non-officer agent] to provide the government with her observations and physical evidence, provided she stayed within the scope of her inherent authority at [her employer]."). In other words, Pleasant does not even suggest that scope of authority is the basis for an exception to the traditional two-part qualified-immunity analysis or that it constitutes a threshold inquiry before reaching (if at all) the merits of the qualified-immunity defense.